## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SARAH SCHNEIDER** | |
| *Plaintiff*, | |
| v. | Case No.: |
| **MASSACHUSETTS HOUSING FINANCE AGENCY**, | *Jury Trial Demanded* |
| *Defendant*. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This action involves claims for religious discrimination under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. 2000e-2 et seq., and the Massachusetts General Laws c. 151B, § 4(1)(1A) ("**Massachusetts State Law**").

### I.    INTRODUCTION

1.    Ms. Schneider ("**Plaintiff**" or "**Ms. Schneider**") started working for the Massachusetts Housing Finance Agency ("**MHFA**" or "**Defendant**") in 2012. She held the title of Quality Assurance Analyst, while splitting time between the Homeownership Lending Division and the Mortgage Insurance Fund division, at the time MHFA terminated her.

2.    In or around March of 2020, MHFA transitioned the overwhelming majority of its workforce to virtually 100% remote work due to its concerns associated with the COVID-19 pandemic. Ms. Schneider made a very smooth transition to this remote work environment, using

1

her own personal cell phone and laptop until MHFA procured equipment for the remote agency workforce.

3.     MFHA slowly transitioned some employees back to in-person office work, but Ms. Schneider remained a 100% remote worker as her role was categorized as well-suited for remote work.

4.     In the summer of 2021, MHFA began to plan and made plans to implement a "Hybrid Work Model," which designated employees as Resident (4-5 days per week in office), Flex (2-3 days per week in office), and Mobile (1 day per week or less in office, minimum one office appearance per month). Ms. Schneider was designated a Mobile employee. This Hybrid Work Model was intended to take effect at the end of 2021.

5.     In her fully remote role, Ms. Schneider was not required to travel or have any in person contact with the public, clients, MHFA employees, or others as part of her essential job duties.

6.     On or about October 14, 2021, MHFA imposed a COVID-19 vaccination mandate (the "**Mandate**") as a condition of continued employment.

7.     On or about October 29, 2021, Ms. Schneider timely submitted her religious accommodation request to the Mandate, and informed MHFA of her sincerely held religious beliefs that precluded her from receiving any COVID-19 vaccines.

8.     The Mandate set December 27, 2021, as the deadline for religious or medical exemption requests to the Mandate to be granted, or unvaccinated employees would be terminated.

9.     On or about November 5, 2021, MHFA's Diversity Officer and ADA Coordinator, Linda Riccardi Donovan, interviewed Ms. Schneider to discuss her religious beliefs in conflict

with receipt of a COVID-19 vaccine. In this interview, and believing it was a good faith interactive process, Ms. Schneider detailed her sincerely held religious beliefs in conflict with receipt of an available COVID-19 vaccine and answered MHFA's questions. Ms. Schneider also showed Ms. Donovan other materials to demonstrate her religious sincerity, such as her "Pray" application (an application that allows one to listen to sermons) to show her subscription predating the Mandate, a church directory to evidence prior church attendance, and her first Bible that she received as a child (containing handwritten notes). Ms. Schneider believed her submission and interview responses were sufficient to demonstrate her religious conflict with receipt of a COVID-19 vaccine, and MHFA never indicated otherwise through the process.

10.     In fact, after this interview, MHFA was satisfied that Ms. Schneider had proffered sincerely held religious beliefs in conflict with receipt of a COVID-19 vaccine that triggered its duty to potentially accommodate her under Title VII and Massachusetts State Law, as evidenced by their subsequent analysis of whether Ms. Schneider could be accommodated without causing an undue hardship to MHFA.

11.     Said differently, MHFA determined that Ms. Schneider was entitled to protection under Title VII and Massachusetts State Law because she had presented a bona fide sincerely held religious conflict with the Mandate.

12.     During this time, MHFA was in the process of implementing its Hybrid Work Model. This was a limited return to office requiring Mobile-designated employees to come into the office, at minimum, once per month. This initiative included a 30% reduction in MHFA's footprint.

13.     On November 12, 2021, MHFA denied Ms. Schneider's religious accommodation request to the Mandate by email, stating that "your request for a religious exemption to MassHousing's Covid-19 Vaccine Mandate cannot be granted because the accommodations required to allow you to perform your duties upon MassHousing's return to the office under its Hybrid Work Model, specifically, the costs that would be imposed on MassHousing to protect the health and safety of other MassHousing employees and clientele and the increased threat to the health and safety of such other MassHousing staff and clientele…" would purportedly pose an undue hardship.

14.     MHFA supposedly determined that Ms. Schneider's vaccination status posed a health and safety threat to all other employees and clientele, long after it was abundantly clear in the general public and the medical community that the mandated vaccines were completely incapable of stopping or even meaningfully or significantly minimizing the risk of infection and transmission of COVID-19.

15.     The same day, Ms. Schneider attempted to appeal the denial of her religious accommodation request by emphasizing the fully remote nature of her essential job duties, the hypothetical nature of the "undue burden" being asserted, the infrequency (once per month) which in-person office appearances were necessary under the Hybrid Work Model, and requesting the opportunity to pay for her own COVID-19 tests, which she would present to MHFA before entry on the rare occasions that she needed to appear in the office. At this time, because MHFA knew its vaccinated employees were contracting COVID-19 at high rates, MHFA knew that regular testing was a more effective pandemic countermeasure than vaccination.

16.     Only a week later, MHFA again declined Ms. Schneider's request for religious accommodation, doubling down on its undue burden assertion, and also stating "[t]here are also certain risks to permitting remote work that are still largely unknown, and ultimately are not risks the Agency is willing to undertake at this time, including but not limited to productivity, morale, mental health, recruitment, and retention." In other words, Defendant asserted itself that the purported burdens on its business relative to Ms. Schneider were purely hypothetical.

17.     On December 29, 2021, with Ms. Schneider's termination imminently set for December 31, 2021, MHFA's Executive Director, Chrystal Kornegay, emailed employees to advise that due to in-person contact of (overwhelmingly vaccinated) employees over the holiday season, there was a spike in COVID-19 positive test reports, and that because of this spike, the implementation of the Hybrid Work Model would be delayed until February 28, 2022. MHFA knew this spike was disproportionately caused by vaccinated employees because it was aware of its employees' vaccination status at the time.

18.     Nonetheless, on December 31, 2021, MHFA terminated Ms. Schneider, relying heavily on pretextual workplace safety rationales (again, Ms. Schneider was a 100% remote employee and was only required to come into the office once per month under the Hybrid Work Model, which was not even going to be implemented until the end of February, 2022), and based on a patently inauthentic (and hypothetical) undue hardship assertion.

19.     MHFA terminated Ms. Schneider, despite actual knowledge that those vaccinated for COVID-19 were contracting and spreading COVID-19 at similar or even higher rates than the unvaccinated employees, like Ms. Schneider.

5

20.    MHFA terminated Ms. Schneider with actual knowledge that her vaccination status posed no greater health or safety threat to anyone than the threat posed by a vaccinated employee (even assuming the fiction that she was *not* a 100% remote worker).

21.    Moreover, Ms. Schneider was not even set to begin MHFA's Hybrid Work Model until February 28, 2022, meaning that she would have continued to be a 100% remote employee until at least February 28, 2022.

22.    Prior to her termination, Ms. Schneider engaged counsel who wrote correspondence to explain that, if MHFA was going to terminate Ms. Schneider based on an alleged "undue hardship," at minimum, MHFA would be required to allow her to continue to work remotely until the Hybrid Work Model took effect. Counsel emphasized that the alleged undue burden was purely hypothetical when the Hybrid Work Model was delayed until February 28, 2022, and if MHFA continued with Ms. Schneider's scheduled termination, it would be strong evidence of religious discrimination.

23.    Ms. Schneider was a 100% remote employee and could have continued to seamlessly perform her essential job duties exceptionally well, as she had done throughout the pandemic while unvaccinated. In other words, MHFA could have accommodated Ms. Schneider at no cost or purported risk to its workplace through simply observing the status quo.

24.    In the event that Ms. Schneider was required to travel on-site to perform her job once per month during the Hybrid Work Model starting in February of 2022, she could have seamlessly performed her job through, inter alia: (1) providing proof of a negative COVID-19 test; (2) masking; (3) recognizing the scientific reality of natural immunity against COVID-19 as an accommodation option and giving the option of taking a COVID-19 antibody test to determine if

she had naturally occurring antibodies prior to presentation to a worksite; (4) observing other enhanced safety protocols where necessary (e.g., social distancing, masking, quarantining when symptomatic), (5) adjusting its "once per month" in-person presence policy for a limited period (until after purported risks posed by the pandemic subsided) as an accommodation option in Plaintiff's case; or (6) any combination of the above.

25.    In short, Ms. Schneider could have been accommodated without any hardship whatsoever, and in a manner that would have created a *safer* workplace than requiring vaccination alone. Defendant, therefore, cannot show that it would have been a "substantial burden" or expense to have accommodated Ms. Schneider's religious beliefs. *See Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (holding that, under Title VII, employers must accommodate their employee's religious beliefs short of "substantial burden" or expense when viewed in light of the particular businesses' capabilities to accommodate).

26.    Defendant also violated Title VII and Massachusetts State Law by failing to engage in a good faith interactive process to determine if a reasonable accommodation existed for Ms. Schneider, failing to provide any of the available low-cost and no-cost reasonable accommodations to Ms. Schneider, and engaging in religious discrimination by treating similarly situated, secular employees more favorably than Ms. Schneider and replacing Ms. Schneider with someone outside of her protected class.

27.    Accordingly, Ms. Schneider seeks damages, including back pay, front pay, liquidated damages, lost benefits, compensatory damages, damages for emotional distress, pain and suffering, punitive damages, and reasonable attorneys' fees and costs, declaratory relief, injunctive relief, as well as any other relief to which she is entitled.

## II.    JURISDICTION AND VENUE

28.    This court has original jurisdiction of this civil action as one arising under the laws of the United States.  *See* 28 U.S.C. §1331.  This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et. seq*. This Court has pendent jurisdiction with regard to the state law claims asserted herein.

29.    Venue is proper in the Court under 42 USC § 2000e-5(f)(3) because but for Defendant's unlawful actions, Ms. Schneider would have continued working in this District, and the unlawful activities alleged occurred within this District. 42 USC § 2000e-5(f)(3).

## III.    PARTIES

30.    Plaintiff Sarah Schneider is a resident of Massachusetts, residing in Norfolk, Massachusetts.

31.    Defendant MHFA is a quasi-public agency of Massachusetts with its principal place of business at One Beacon Street, Boston, Massachusetts. MHFA conducts its business in this District and the discrimination alleged occurred within this District.

## IV.    FACTUAL ALLEGATIONS

*Ms. Schneider's Employment with MHFA*

32.    Ms. Schneider started with MHFA as a contract employee in 2012. She subsequently became a direct employee of MHFA, a Quality Assurance Analyst, while splitting time between the Homeownership Lending Division and the Mortgage Insurance Fund division, at the time of her termination.

33.    In her role, Ms. Schneider was mainly focused on the operational needs of the Mortgage Insurance Fund. For approximately three years leading up to her termination, Ms.

Schneider was a key employee who was tasked with implementing the Private Mortgage Insurance Eligibility Requirements ("**PMIERs**"), which were new business requirements issued to all Mortgage Insurers who insured loans sold to Fannie Mae and Freddie Mac.

34.     This multi-year implementation included working on cross-functional teams throughout the agency, expanding data and reporting, and working with MHFA's in-house developers to expand functionality of the mortgage insurance's business to business portal.  She also participated on the team collaborating with technology consultants to implement a new loan origination system.  Ms. Schneider tested Mortgage Insurance related functionality, insured business line needs were met, and worked to integrate the loan origination system with existing mortgage insurance servicing system.

35.     Because Ms. Schneider's essential job duties were performed 100% remotely during the relevant period, Ms. Schneider's role did not require in-person contact.

36.     Ms. Schneider received executive praise during this period due to the scaled and relaunched digital program she was part of putting together.

37.     Ms. Schneider was an exceptional employee who thrived in a fully remote role.

***MHFA's COVID-19 Vaccination Mandate***

38.     On or about October 29, 2021, MHFA announced its COVID-19 vaccination mandate.  The Mandate set November 3, 2021, as the submission deadline for religious or medical exemption requests to the Mandate.

39.     At this time, it was abundantly clear that the available COVID-19 vaccines were incapable at preventing infection and transmission of COVID-19, as MHFA's own internal COVID-19 tracking data will reveal.

9

40.    Because MHFA closely tracked COVID-19 infections in its workforce, MHFA had actual knowledge that vaccinated employees were still contracting and transmitting COVID-19 at similar or higher rates than unvaccinated employees.

41.    As early as August 2021, the Centers of Disease Control and Prevention ("**CDC**") recognized that the COVID-19 vaccines worked "with regard to severe illness and death…but what they c[ouldn't] do anymore is prevent transmission." Statement by Rochelle Walensky, U.S. Centers for Disease Control, CNN Interview (Aug. 5, 2021).[1]  As such, federal health authorities acknowledged prior to Ms. Schneider's termination that the mandated vaccines were purely personal protection devices incapable of preventing infection and transmission of the virus.

42.    During this time, MHFA possessed actual and/or constructive knowledge that the mandated vaccines were not effective at preventing transmission and infection by any reasonable or objective measure. In fact, MHFA's records will show its vaccinated employees were contracting COVID-19 at similar or higher rates than unvaccinated religious employees, like Ms. Schneider, during the relevant time frames.

43.    Ms. Schneider personally recalls her own colleagues that had already been vaccinated against COVID-19 calling out sick and advising that they tested positive for COVID-19 during the relevant period.

---

[1] *See* Madeline Holcombe, *Fully vaccinated people who get a Covid-19 breakthrough infection can transmit the virus, CDC chief says, CNN Aug. 6, 2021,* last visited September 20, 2024, available at https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html.

44.    Ms. Schneider's observation of vaccine inefficacy is consistent with research from one of the world's most prestigious medical institutions-the Cleveland Clinic, which has found that the risk of contracting COVID-19 **increases** with the number of vaccine doses received.[2]

45.    Regardless of its contemporaneous knowledge that COVID-19 vaccines were ineffective at preventing the transmission and infection of COVID-19, MHFA implemented and maintained the Mandate as a condition of continued employment against employees it knew were unable to comply for religious reasons, knowing that the mandated medical procedure was at best a personal protection device, and those employees with religious objections to vaccination could have been seamlessly accommodated at little or no cost (even assuming the fiction that the mandated vaccines actually worked to prevent infection and transmission – the undergirding, and pretextual rationale for Mr. Schneider's termination).

46.    Despite clearly stated religious reasons for declining COVID-19 vaccination, MHFA – in reckless disregard of Ms. Schneider's Title VII rights – insisted that Ms. Schneider abandon her beliefs in exchange for personal protection, counterfactually insisting that accommodating Ms. Schneider's beliefs would cause an undue hardship on its business.

47.    Again, the mandated vaccines do not prevent transmission or infection. At best, the mandated vaccines provided an undefined level of personal protection, a benefit Ms. Schneider gladly declined to preserve her religious integrity.

---

[2] *See* Nabin K. Shrestha et al., MedRxiv, *Effectiveness of Coronavirus Disease (COVID-19) Bivalent Vaccine*, (Dec. 19, 2022), available at https://www.medrxiv.org/content/10.1101/2022.12.17.22283625v1 (in comprehensive study, researchers found the risk "of COVID-19 increased with time since the most recent prior COVID-19 episode *and with the number of vaccine doses previously received*") (**emphasis added**) (last visited September 20, 2024).

*Ms. Schneider's Religious Accommodation Request*

48.     As a Christian, Ms. Schneider holds sincere religious beliefs that preclude her from complying with COVID-19 vaccination.

49.     On or around October 29, 2021, Ms. Schneider submitted her religious exemption request.

50.     In her request, Ms. Schneider explained that Genesis 1:27 states: "So God created man in his own image, in the image of God he created him; male and female he created them." Because of this, Ms. Schneider believes that she cannot alter God's creation, and receipt of a COVID-19 vaccine (which Ms. Schneider believes is mRNA gene therapy) would be altering God's creation, a sin in her religious system of belief that would have spiritual consequences. Ms. Schneider sincerely believes that the COVID-19 vaccines were capable of altering her God-designed genetic makeup, and that to do so would be an affront to God that would potentially have serious spiritual ramifications.

51.     Similarly, Ms. Schneider believes that God created her "divinely designed immune system," and that it would be a sin to alter her divinely created immune system via receipt of an available COVID-19 vaccine due to the spike protein it contains. Ms. Schneider believes that for this reason, receiving an available COVID-19 vaccine would be a sin and have spiritual implications.

52.     Separately, Ms. Schneider believes that believers of Christ are given the Holy Spirit and discernment to see the world through a spiritual lens. She believes this equips her to perceive and discern ongoing spiritual war. She believes that she is made in God's image and through Christ and the Holy Spirit, she has discernment, and knows for certain she received spiritual discernment

from the Holy Spirit that she should not receive a COVID-19 vaccine and that to do so would be to disobey her spiritual discernment to the contrary.

53.    She also believes that her body was bought with the blood of Jesus and she cannot do something that may cause her to be spiritually unclean and negatively impact her soul. Trading her bodily and spiritual integrity for a paycheck is tantamount to prostitution in her religious system of beliefs, which her discernment does not allow her to do. In this regard, Ms. Schneider cited 1 Corinthians 6:19-20 in her religious accommodation request to support this sincerely held religious belief in conflict with receiving a COVID-19 vaccine.

54.    On separate and distinct grounds, also for religious reasons, Ms. Schneider believes that due to spiritual darkness in this world (1: John), she must use discernment to know which spirits are of the light, and which are evil, relying on Romans 12:2, and that the spirits can be tested by looking at their fruit (Mark 7:15-20). She believes that spiritual darkness will "masquerade as an angel of light" (2 Corinthians) and that her "struggle is not against flesh and blood, but against the rulers, against the authorities, against the powers of this dark world and against the spiritual forces of evil (Ephesians 6)." Ms. Schneider sincerely believes that the COVID-19 vaccines were not of the light, driven by dark forces, and through focused meditation and prayer, came under firm spiritual conviction that she must not be connected to this darkness. She based her convictions on what she believed is her God-given spiritual discernment, and to violate her conviction and go contrary to this discernment would demonstrate disobedience to God.

55.    She believed and sincerely believes that receipt of a COVID-19 vaccine would harm her spiritually, that it would defile her spiritual being.

56.    Ms. Schneider believes that we can make decisions here in the physical world that impact our soul. We may have to answer for these choices on judgement day. The amount of judgement we will receive, based on our decisions, is directly correlated to our level of discernment or convictions surrounding a certain decision. Not all Christians have the same convictions, or have been given the same discernments, however, if you are convicted or you have been given discernment, you should choose to listen, or you may have to answer for that decision on judgement day. In other instances, God may impart discernment on an individual in order to keep them safe or avoid a pitfall. In this case, these may not be decisions we have to answer for on judgement day, but obviously not listening may impact us negatively here in the physical world. Or, God will place something on your heart to steer you in a potential direction or will work to influence your decisions in order to bring others to Christ, build your character/testimony, help another soul, bring glory to God or draw you closer to Him.

57.    Ms. Schneider was willing to lose a career she loved for her religious convictions in conflict with receipt of a COVID-19 vaccine, demonstrating the intensity of her convictions.

58.    Once she receives discernment from God to act, or not act, imparted on her through the Holy Spirit, she is very careful to conduct her actions in accordance with her discernment, which she believes God imparts directly to her through the Holy Spirit, particularly in cases where, like here, Ms. Schneider has been faithful to search out God on the issue and received firm discernment from God.

59.    Prior to submitting a religious accommodation request to the Mandate, Ms. Schneider engaged this process and came under firm religious conviction that she must not receive a COVID-19 vaccine.

14

60.     Ms. Schneider made clear to MHFA her religious conflict with COVID-19 vaccination, including for reasons detailed above, in her religious accommodation request.

61.     However, MHFA refused to engage in a good faith interactive process to identify what reasonable accommodations were available. Had MHFA operated in good faith, it would have identified a variety of low-cost and no-cost accommodation options, particularly, keeping the status quo of telework.

62.     Instead, MHFA summarily concluded that in-person contact between a vaccinated and unvaccinated person posed severe health and safety risks to their workforce, and decided that it would terminate Ms. Schneider because accommodating her would supposedly result in undue hardship to MHFA. This was despite the fact that Ms. Schneider's role required no in-person contact, and that a multitude of no-cost and low-cost accommodation options existed.

***MHFA's Bad Faith Accommodations Process***

63.     MHFA provided instructions on obtaining religious and medical exemptions from the Mandate.  Exemption requests had to be submitted by November 3, 2021.

64.     MHFA warned Ms. Schneider in the religious accommodation form that the information in her religious exemption request must be "accurate." The company went so far as to threaten Ms. Schneider that any perceived "misrepresentation" in the religious exemption request would be grounds for "disciplinary action," up to and including dismissal.

65.     When Ms. Schneider submitted her accommodation requested, she validated that she possesses "a sincerely held religious belief" that necessitated a reasonable accommodation from the Mandate, subjecting herself to dismissal if her verification was deemed to be a misrepresentation.

15

66.     Importantly, the religious accommodation form also noted that:

> In some cases, MassHousing will need to obtain additional
> information and/or documentation about your religious practices or
> beliefs and may need to discuss the nature of your religious beliefs,
> practices, o[r] accommodation with your religious spiritual leader
> (if applicable) or religious scholars to address your request for an
> exemption. If requested, can you provide documentation to support
> your beliefs and need for an accommodation?

67.     Ms. Schneider answered this question in the affirmative by checking the "Yes" box.

68.     At no time did MHFA request additional information on Ms. Schneider's spiritual leader. In other words, after reviewing Ms. Schneider's religious exemption request, MHFA was satisfied that Ms. Schneider provided a bona fide religious belief conflicting with receipt of an available COVID-19 vaccine.

69.     The accommodation process (or lack thereof) was constructed in bad faith, with the intention to purge the maximum number of employees with religious beliefs and practices in conflict with COVID-19 vaccination as possible. In furtherance of achieving its discriminatory goals, MHFA, before even soliciting accommodation requests, preemptively (and unlawfully) concluded that no in-person contact between a vaccinated employee and unvaccinated employee was permissible without causing undue hardship on its business.

70.     In proceedings before the Massachusetts Commission against Discrimination, MHFA defined its undue burden as:

> Here, the Complainant's failure to abide by the Vaccine Mandate
> presented a risk to the health and safety of the Respondent's
> employees, including the Complainant herself. Masking, testing,
> and social distancing are all less effective, and ultimately more
> difficult to enforce, than vaccination. Although the Complainant's
> "Mobile" designation meant that she was permitted to come to the
> office infrequently, she would have had contact with other
> employees on those days when she was in the office, and therefore,

would have presented a risk to the health and safety of other
employees on those days.

71.     In other words, a person unvaccinated for religious reasons could not be
accommodated under *any circumstances if any degree of in-person contact* may hypothetically
have been required. In no uncertain terms, MHFA determined that contact between a vaccinated
and unvaccinated individual was impermissible and a per se, undue burden. This policy facially
violates Title VII and Massachusetts State Law.

72.     Free testing was available for Ms. Schneider during the relevant period, so testing
was a no-cost option – and a more effective countermeasure than vaccination because vaccinated
employees were spreading COVID-19 – that Ms. Schneider would happily have abided by,
assuming the fiction that she was not already working 100% remotely.

73.     Ms. Schneider also advised MHFA she would pay for the costs of her own testing
and provide a negative COVID-19 test on each day she was required to present to the office.

74.     MHFA never seriously considered any accommodation options for Ms. Schneider,
ultimately taking the position that one must be vaccinated to be employed, with no room for those
with sincerely held religious objection to receipt of a COVID-19 vaccine.

75.     This makes sense given that one of MHFA's stated goal was to have a 100%
vaccinated workforce.

76.     In fact, MHFA denied all 7 religious accommodation requests that it received.

77.     Simultaneously, MHFA granted (on a temporary basis) both of the medical
accommodation requests that it received. This uneven application of its "accommodation process"
demonstrates MHFA's religious animus.

78.     Accordingly, consistent with its facially unlawful policy, MHFA willfully disregarded Title VII's requirements and continued to insist it would not accommodate Ms. Schneider's clearly stated religious conflict with receipt of a COVID-19 vaccine.

79.     MHFA terminated Ms. Schneider on December 31, 2021.

***Events Following Termination***

80.     On October 21, 2022, Ms. Schneider filed official charges of discrimination with the Massachusetts Commission against Discrimination ("**MCAD**") and the Equal Employment Opportunity Commission ("**EEOC**"), alleging disparate treatment religious discrimination and failure to accommodate her sincerely held religious beliefs precluding receipt of a COVID-19 vaccine.[3]

81.     On December 16, 2024, Ms. Schneider filed a notice of withdrawal with the Massachusetts Commission against Discrimination.[4]

82.     On December 18, 2024, the EEOC issued an official Right to Sue notice.[5]

## V.    CAUSES OF ACTION

### COUNT ONE
### TITLE VII-RELIGIOUS DISCRIMINATION
### FAILURE TO ACCOMMODATE
### 42. U.S.C. §2000(e), *et. seq.*

83.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

---

[3] See Exhibit 1, Charge of Discrimination.

[4] *See* Exhibit 2, MCAD Notice of Removal.

[5] *See* Exhibit 3, EEOC Right to Sue Letter.

84.    Title VII of the Civil Rights Act of 1964, as amended in 1972, makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e-2(a)(1).

85.    The statute states that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" *Id*. The term "religion" as used within Title VII includes "all aspects of religious observance and practice, as well as belief." *Id*.

86.    "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.S. § 2000e(j). Because this definition includes a requirement that an employer "accommodate" an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim.

87.    An employee can bring suit based on the theory that the employer discriminated against them by failing to accommodate the employee's religious beliefs in conflict with an employment policy. *See E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 55 (1st Cir. 2004)).

88.    To establish a *prima facie* case of failure to accommodate a religious belief, a plaintiff must show "(1) a <u>bona fide</u> religious practice conflicts with an employment requirement; (2) that he or she brought the practice to the [employer's] attention; and (3) that the religious practice was the basis for an adverse employment decision." *Id*.

89.    For the reasons detailed throughout, Ms. Schneider holds sincere beliefs that preclude her from receipt of a COVID-19 vaccine and informed MHFA of same.

90.    MHFA validated that Ms. Schneider possesses a sincere religious conflict with the Mandate and acknowledged that it possessed a Title VII duty to accommodate her religious beliefs if it could without incurring an undue hardship.

91.    On October 29, 2021, Ms. Schneider submitted her religious exemption request and outlined her religious conflict with COVID-19 vaccination, placing MHFA on notice of its duty to accommodate short of undue hardship.

92.    This "accommodation process" was a sham. MHFA made the ultimate determination, before individually analyzing its ability to accommodate Ms. Schneider without undue hardship, that any level of in person contact with coworkers or the public, at any time for any reason (necessary for all employees, even Mobile employees under the Hybrid Work Model) would amount to an undue hardship for MHFA.

93.    In other words, MHFA instituted a bad faith accommodation process that failed to consider the low cost and no-cost accommodation options available to accommodate Ms. Schneider. Had it implemented a good faith accommodation process, however, it would have been unable to rid itself of the maximum number of employees who had disfavored religious beliefs in conflict with vaccination, like Ms. Schneider.

94.    Ms. Schneider's beliefs are indeed sincere, as evidenced by her willingness to uphold her beliefs while threatened with the loss of her livelihood and career.

95.    In addition, for the reasons detailed throughout, Ms. Schneider's beliefs against receiving a COVID-19 vaccine are based on her religious convictions.

96.     Ms. Schneider's sincerely held beliefs against COVID-19 vaccination are fully integrated into her comprehensive religious belief system, which guides daily decision making for matters both large and small.

97.     Ms. Schneider timely submitted her religious exemption request, informing Defendant of how her sincerely held religious beliefs preclude her from receiving a COVID-19 vaccine.

98.     After evaluating Ms. Schneider's religious accommodation and exemption requests, and validating that she indeed possessed a sincere religious conflict with the Mandate, Defendant denied Ms. Schneider's religious accommodation request on "undue hardship" grounds.

99.     Defendant did not engage in a good faith interactive process with Ms. Schneider to determine if it was possible to accommodate her articulated and sincere religious objections to receipt of a COVID-19 vaccine because it predetermined that no accommodation was possible.

100.    After following its bad faith exemption/accommodation process, Defendant denied Ms. Schneider's religious exemption request and subsequent attempt to appeal on November 19, 2021.

101.    Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to show that it could not reasonably accommodate the employee without undue hardship. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004).

102.    The Supreme Court's recent ruling in *Groff,* 600 U.S. at 470, makes clear that an "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*.

21

103.    When evaluating whether an accommodation would constitute an undue burden, employers must take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.*  Thus, "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.*

104.    Because there were multiple no-cost and low-cost accommodation options available, Defendant could have accommodated Ms. Schneider short of undue hardship.

105.    The most obvious accommodation option was observing the no-cost status quo of telework.

106.    There were other low-cost and no-cost accommodation options MHFA refused to consider. In the event that Ms. Schneider was required to travel on-site to perform her job, she could have seamlessly performed her job through, inter alia: (1) providing proof of a negative COVID-19 test; (2) masking; (3) recognizing the scientific reality of natural immunity against COVID-19 as an accommodation option and giving the option of taking a COVID-19 antibody test to determine if she had naturally occurring antibodies prior to presentation to a worksite; (4) observing other enhanced safety protocols where necessary (e.g., social distancing, masking, quarantining when symptomatic) (5) adjusting its "once per month" in-person presence policy for a limited period (until after purported risks posed by the pandemic subsided) as an accommodation option in Plaintiff's case; or (6) any combination of the above.

107.    With any of these easily identifiable and low-cost/no-cost accommodation options, Ms. Schneider would have been able to continue performing the essential functions of her job with minimal or no burden to Defendant.

108.    Defendant refused to consider, much less provide, any of the above-referenced accommodations options for Ms. Schneider.

109.    Instead, Defendant terminated Ms. Schneider for choosing to uphold her religious convictions in conflict with receipt of a COVID-19 vaccine.

110.    Because her sincere religious beliefs precluded Ms. Schneider from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission, but would violate Ms. Schneider's sincerely held religious beliefs, and considering attorneys reached out to MHFA prior to Ms. Schneider's termination and emphasized that Defendant was violating Title VII, Defendant's actions were in reckless disregard of Ms. Schneider's rights under Title VII.

111.    Defendant was well-aware that religious accommodations were being granted in other employment settings, even in hospitals across the country.  Nonetheless, Defendant forged ahead with its discrimination, recklessly and maliciously disregarding Ms. Schneider's Title VII rights. In other words, Defendant knew it was violating the law, but terminated Ms. Schneider anyway.

112.    Further, Defendant's decision to end Ms. Schneider's telework career based on a workplace safety justification further demonstrates MHFA's reckless disregard of Ms. Schneider's Title VII rights.

113.    As a result of Defendant's unlawful actions, Ms. Schneider has suffered emotional and psychological distress from the loss of her career, loss of promotional opportunities, and the months of uncertainty and repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.

114.    As a result of the discriminatory treatment she experienced, she is suffering from emotional distress which is or has been marked by lack of focus, loss of purpose and professional confidence in everyday life; feelings of despondency; social anxiety; trouble sleeping and feelings of worry and dread.

115.    As a result of Defendant's unlawful actions, Ms. Schneider has also suffered financial harm including loss of wages, cost of living adjustment pay increases, loss of and/or reduced coverage of health insurance, employee assistance program, short, and long-term disability insurance, company matched retirement, tuition reimbursement, pension benefits, compounding interest, incremental raises, and accidental death insurance.

116.    As a result of Defendant's actions, Ms. Schneider's professional reputation has been irreparably damaged.  Without lawful justification, her reputation in the industry is forever damaged because an industry leader terminated her, and upon information and belief, indicated she is not re-hirable within the company or its subsidiaries, a position that has gravely impacted Ms. Schneider's standing in her industry.

117.    Defendant's actions were willful, wanton, and/or malicious, and demonstrate reckless disregard for Ms. Schneider's rights under Title VII. As a direct and proximate result of MHFA's discriminatory treatment, Ms. Schneider has suffered, and continues to suffer, economic, pecuniary damages for which she is entitled to judgment.

118.    The foregoing conduct constitutes illegal, and intentional failure to accommodate that is prohibited under 42 USC § 2000e-2 *et seq*.

119.    Ms. Schneider seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

120.    All of the aforementioned damages were actually and proximately caused by Defendant's violation of Title VII.

121.    As a direct and proximate result of the discriminatory treatment, Ms. Schneider has suffered, and continues to suffer, the damages hereinafter described. Accordingly, Ms. Schneider requests relief as hereinafter described.

## COUNT TWO
### TITLE VII - RELIGIOUS DISCRIMINATION
### DISPARATE TREATMENT
### 42 U.S.C 2000e-2(a)(1)

122.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

123.    Ms. Schneider will also demonstrate a *prima facie* case for religious discrimination under a disparate treatment theory.

124.    A *prima facie* case for disparate treatment requires the plaintiff to show: (1) he or she is a member of a protected class; (2) possessed the necessary qualifications and adequately performed his or her job; (3) was nevertheless dismissed or otherwise suffered an adverse employment action at the hand of his or her employer; and (4) his or her employer sought someone of roughly equivalent qualifications to perform substantially the same work" or under other

25

circumstances that indicate discrimination. *See Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, F.3d 52, 58 (1st Cir. 2005).

125.    As a practicing Christian who notified Defendant of her religious conflict with the Mandate, Ms. Schneider is a member of a protected class.

126.    As demonstrated by her strong performance record and executive praise during this period due to the scaled and relaunched digital program she was part of putting together, Ms. Schneider was qualified for her job.

127.    Ms. Schneider suffered adverse employment action when she requested religious accommodation to the Mandate and was denied based on a pretextual reason.  She suffered additional adverse action when she was terminated due to her religious conflict with receipt of a COVID-19 vaccine.

128.    MHFA sought someone of roughly the same qualification to perform the analogous work, and ultimately replaced Ms. Sneider or re-allocated her job duties to an employee who does not have religious objections to COVID-19 vaccination.

129.    The circumstances surrounding Ms. Schneider's termination also generate strong inferences of discrimination.

130.    MHFA knew or should have known during the relevant time frames that the mandated vaccines were incapable of preventing infection of COVID-19. Yet, the company terminated Ms. Schneider on provably false rationales, asserting that Ms. Schneider must violate her religious beliefs because workplace safety could only be achieved through vaccination. MHFA also knew that many low-cost and no-cost accommodations were readily available, yet counterfactually claimed the opposite. MHFA also knew its vaccinated employees were

contracting COVID-19 at similar or higher rates than unvaccinated religious employees, like Ms. Schneider. Nonetheless, the company counterfactually maintained that Ms. Schneider posed an unacceptable safety risk relative to its secular vaccinated employees, and that her career must, therefore, be ended. Simultaneously, MHFA granted medical accommodation requests while denying all religious accommodation requests. In these circumstances, an inference of discrimination is more than plausible.

131.    On belief, MHFA replaced Ms. Schneider with an employee outside the relevant protected class, a vaccinated employee who did not possess religious beliefs in conflict with COVID-19 vaccination, with roughly the same qualifications, giving rise to further inferences of discrimination.

132.    Defendant also knew that requiring Ms. Schneider to comply with the Mandate would force her to violate her religious beliefs.

133.    Ms. Schneider gladly declined any hypothetical personal protection the COVID-19 vaccines may have provided in order to preserve her religious convictions.

134.    For the reasons detailed throughout, any reasons Defendant attempts to use to justify Ms. Schneider's termination are pretext. Most glaringly, Ms. Schneider was working remotely and was performing her essential job functions at a high level when MHFA terminated her, yet MHFA inauthentically claimed that accommodating her would constitute an undue hardship and suspiciously embraced the significant business costs of recruiting, rehiring, and re-training a high performing employee.

135.    Furthermore, the publicly available data and Defendant's own business records showing that the vaccines were incapable of preventing infection or transmission, or at least

providing some defined level of protection, further demonstrates Defendant's disingenuous justification for terminating religious employees, like Ms. Schneider. If workplace safety was truly its intention, Defendant would have accepted natural immunity as satisfying the Mandate's requirements (which it did not), and would have required its vaccinated employees, who were contracting COVID-19 at similar or higher rates than unvaccinated religious employees during the relevant timeframes, to adhere to enhanced safety protocols to ensure vaccinated employees did not spread the virus to vulnerable co-workers and to members of the public at large.

136.    In short, considering the foregoing, Ms. Schneider was terminated "because of" her religious beliefs.

137.    MHFA possessed unlawful motivations to purge the maximum number of employees who possessed religious objections to vaccination as possible, including Ms. Schneider.

138.    The aforementioned conduct is prohibited under Title VII and constitutes a violation of the same.

139.    As a result of Defendant's unlawful actions, Ms. Schneider has suffered financial harm including loss of wages, cost of living adjustment pay increases, loss of and/or reduced coverage of health insurance, employee assistance program, short, and long-term disability insurance, company matched retirement, tuition reimbursement, pension benefits, compounding interest, incremental raises, and accidental death insurance.

140.    Because her sincere religious beliefs precluded Ms. Schneider from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission, but would violate Ms. Schneider's sincerely held religious beliefs, and considering attorneys reached out to MHFA prior to Ms. Schneider's

termination and emphasized that Defendant was violating Title VII, Defendant's actions were in reckless disregard of Ms. Schneider's rights under Title VII.

141.    Defendant was well-aware that religious accommodations were being granted in other employment settings, even in hospitals across the country.  Nonetheless, Defendant forged ahead with its discrimination, recklessly and maliciously disregarding Ms. Schneider's Title VII rights. In other words, Defendant knew it was violating the law, but terminated Ms. Schneider anyway.

142.    For the reasons detailed throughout, Defendant recklessly and maliciously disregarded Ms. Schneider's Title VII rights, meriting punitive damages.

143.    In addition to financial loss, Ms. Schneider suffered emotional and psychological harm from the months of uncertainty and repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.  As a result of the discriminatory treatment she experienced, she is suffering from emotional distress which is or has been marked by lack of focus, loss of purpose and professional confidence in everyday life; feelings of despondency; social anxiety; trouble sleeping and feelings of worry and dread.

144.    Ms. Schneider seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

145.    All of the aforementioned damages were actually and proximately caused by Defendant's violation of Title VII.

146.    As a direct and proximate result of the discriminatory treatment, Plaintiff has suffered, and continues to suffer, the damages hereinafter described.

147.    Accordingly, Ms. Schneider requests relief as hereinafter described.

**COUNT THREE**
**FAILURE TO ACCOMMODATE**
**MASSACHUSETTS GENERAL LAWS**
**(Massachusetts General Laws c. 151B, § 4 (1A))**

148.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

149.    As a general matter, an employer's failure to adequately explore possible available accommodations with an individual for her sincerely held religious beliefs violates G.L. c. 151B § 4 (1A). *MBTA v. Mass. Comm'n Against Discrimination, et al.*, 450 Mass. 327 (2008).

150.    Here, for the reasons stated above, Ms. Schneider has sincere religious beliefs in conflict with COVID-19 vaccination – which MHFA validated – and MHFA could have accommodated her without any hardship whatsoever.

151.    Further, MHFA never seriously considered accommodating Ms. Schneider's sincerely held religious beliefs in conflict with receipt of a COVID-19 vaccine.

152.    MHFA predetermined that no accommodations would be granted for any unvaccinated, religious employees with any degree of if person contact, even under the extremely limited, one-office-visit-per-month Mobile employee Hybrid Work Model standard.

153.    As detailed above and throughout this Complaint, Defendant violated Massachusetts General Laws c. 151B, § 4 (1A) by engaging in religious discrimination and failing to accommodate Ms. Schneider's religious beliefs.

154.    As a result of Defendant's unlawful actions, Ms. Schneider has also suffered financial harm including loss of wages, cost of living adjustment pay increases, loss of and/or reduced coverage of health insurance, employee assistance program, short, and long-term

disability insurance, company matched retirement, tuition reimbursement, pension benefits, compounding interest, incremental raises, and accidental death insurance.

155.    In addition to financial loss, Ms. Schneider suffered emotional and psychological harm from the months of uncertainty and repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.  As a result of the discriminatory treatment she experienced, she is suffering from emotional distress which is or has been marked by lack of focus, loss of purpose and professional confidence in everyday life; feelings of despondency; social anxiety; trouble sleeping and feelings of worry and dread.

156.    Because her sincere religious beliefs precluded Ms. Schneider from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission, but would violate Ms. Schneider's sincerely held religious beliefs, and considering attorneys reached out to MHFA prior to Ms. Schneider's termination and emphasized that Defendant was violating Massachusetts State Law, Defendant's actions were in reckless disregard of Ms. Schneider's rights under Massachusetts State Law.

157.    Defendant was well-aware that religious accommodations were being granted in other employment settings, even in hospitals across the country.  Nonetheless, Defendant forged ahead with its discrimination, recklessly and maliciously disregarding Ms. Schneider's Massachusetts State Law rights. In other words, Defendant knew it was violating the law, but terminated Ms. Schneider anyway.

158.    For the reasons detailed throughout, Defendant recklessly and maliciously disregarded Ms. Schneider's rights under Massachusetts State Law, meriting punitive damages.

159.    Ms. Schneider seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

160.    All of the aforementioned damages were actually and proximately caused by Defendant's violation of Massachusetts General Laws c. 151B, § 4 (1A).

161.    As a direct and proximate result of the discriminary treatment, Plaintiff has suffered, and continues to suffer, the damages hereinafter described. Accordingly, Ms. Schneider requests relief as hereinafter described.

## COUNT FOUR
### INTENTIONAL RELIGIOUS DISCRIMINATION
### MASSACHUSETTS GENERAL LAWS
### (Massachusetts General Laws c. 151B, § 4 (1))

162.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

163.    As a general matter, disparate treatment religious discrimination violates G.L. c. 151B § 4 (1). *See Sullivan v. Liberty Mutual Ins. Co.*, 444 Mass. 34, 41 (2005).

164.    Here, for the reasons stated above, MHFA took adverse employment action against Ms. Schneider because of her religion.

165.    MHFA terminated Ms. Schneider because of her religion.

166.    MHFA refused to allow Ms. Schneider to continue to work remotely until the Hybrid Work Model schedule began because of her religion.

167.    MHFA predetermined that no accommodations would be granted for any unvaccinated, religious employee with any degree of if person contact, even under the extremely limited, one-office-visit-per-month Mobile employee Hybrid Work Model standard.

168.    As detailed above and throughout this Complaint, Defendant violated Massachusetts General Laws c. 151B, § 4 (1) by engaging in intentional religious discrimination and failing to accommodate Ms. Schneider's religious beliefs and subjecting her to adverse employment action because of her religion.

169.    Defendant terminated Ms. Schneider because of her disfavored religious beliefs and practices.

170.    Defendant was also motivated to terminate Ms. Schneider based on her disfavored religious beliefs and practices.

171.    Defendant replaced Ms. Schneider with an employee outside the relevant protected class.

172.    Defendant treated similarly situated employees without religious objections to vaccination more favorably than Ms. Schneider.

173.    Further, the circumstances surrounding Ms. Schneiders termination generate strong inferences of discriminatory intent. Specifically, Defendant knew its vaccinated employees were contracting COVID-19 at similar or higher rates than unvaccinated religious employees, yet justified Ms. Schneider's termination based on workplace safety grounds, that Ms. Schneider – a remote worker – posed an unacceptable health and safety risk relative to her secular vaccinated colleagues (who Defendant knew were contracting COVID-19 at high rates).

174.    For the reasons stated above, any reasons given for Ms. Schneider's termination are pretextual.

175.    As a result of Defendant's unlawful actions, Ms. Schneider has also suffered financial harm including loss of wages, cost of living adjustment pay increases, loss of and/or

reduced coverage of health insurance, employee assistance program, short, and long-term disability insurance, company matched retirement, tuition reimbursement, pension benefits, compounding interest, incremental raises, and accidental death insurance.

176.    In addition to financial loss, Ms. Schneider suffered emotional and psychological harm from the months of uncertainty and repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.  As a result of the discriminatory treatment she experienced, she is suffering from emotional distress which is or has been marked by lack of focus, loss of purpose and professional confidence in everyday life; feelings of despondency; social anxiety; trouble sleeping and feelings of worry and dread.

177.    Because her sincere religious beliefs precluded Ms. Schneider from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission, but would violate Ms. Schneider's sincerely held religious beliefs, and considering attorneys reached out to MHFA prior to Ms. Schneider's termination and emphasized that Defendant was violating Massachusetts State Law, Defendant's actions were in reckless disregard of Ms. Schneider's rights under Massachusetts State Law.

178.    Defendant was well-aware that religious accommodations were being granted in other employment settings, even in hospitals across the country.  Nonetheless, Defendant forged ahead with its discrimination, recklessly and maliciously disregarding Ms. Schneider's Massachusetts State Law rights. In other words, Defendant knew it was violating the law, but terminated Ms. Schneider anyway.

179.    For the reasons detailed throughout, Defendant recklessly and maliciously disregarded Ms. Schneider's Massachusetts State Law rights, meriting punitive damages.

180.    Ms. Schneider seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

181.    All of the aforementioned damages were actually and proximately caused by Defendant's violation of Massachusetts General Laws c. 151B, § 4 (1).

182.    As a direct and proximate result of the discriminatory treatment, Plaintiff has suffered, and continues to suffer, the damages hereinafter described. Accordingly, Ms. Schneider requests relief as hereinafter described.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendant, awarding relief as follows:

i.    Declare that Defendant discriminated against Ms. Schneider in violation of Title VII for its failure to provide a reasonable accommodation to her sincere religious beliefs when numerous no-cost or low-cost options were available;

ii.    Declare that Defendant violated Title VII by terminating Ms. Schneider due to her sincere religious beliefs in conflict with the Mandate;

iii.    Declare that Defendant recklessly disregarded Ms. Schneider's Title VII rights;

iv.    Declare that Defendant violated the Massachusetts State Law for its failure to provide a reasonable accommodation to her sincere religious beliefs when numerous no-cost or low-cost options were available;

v.    Declare that Defendant violated Massachusetts State Law by terminating Ms. Schneider due to her sincere religious beliefs in conflict with the Mandate;

vi.     Declare that Defendant recklessly disregarded Ms. Schneider's Massachusetts State Law rights;

vii.    Require Defendant's supervisors and upper management to undergo training for Title VII and Massachusetts State Law regarding their duties to avoid discrimination on the basis of religion, consistent with Title VII and Massachusetts State Law requirements;

viii.   Issue a permanent injunction requiring Defendant to expunge Ms. Schneider's personnel files of any derogatory, false, or misleading information relating to this matter;

ix.     Award Ms. Schneider damages, which exceed $100,000.00, including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, compensatory damages, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

x.      Award Ms. Schneider damages necessary to make her whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial;

xi.     Award Ms. Schneider damages for severe emotional distress that resulted from Defendant's unlawful actions;

xii.    Award Ms. Schneider reasonable attorneys' fees and costs; and

Grant any other relief that the Court deems just and proper.

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all counts so triable.

Dated:   December 23, 2024                      Respectfully submitted,

                                                SARAH SCHNEIDER

                                                By her attorneys,

                                                _/s/ Shehzad Rajwani_
                                                Shehzad Rajwani (BBO # 674442)
                                                The Harbor Law Group
                                                96 West Main Street, Suite C
                                                Northborough, MA  01532
                                                508-393-9244 – Phone
                                                508-393-9245 – Fax
                                                Email: srajwani@harborlaw.com

                                                Walker Moller*
                                                SIRI | GLIMSTAD LLP
                                                1005 Congress Avenue
                                                Suite 925-C36
                                                Austin, Texas 78701
                                                Main: 512-265-5622
                                                Facsimile: 646-417-5967
                                                wmoller@sirillp.com

                                                Jack R. Spitz*
                                                SIRI | GLIMSTAD LLP
                                                8 Campus Drive, Suite 105 PMB#161
                                                Parsippany, New Jersey 07054
                                                Main: 212-532-1091
                                                Facsimile: 646-417-5967
                                                jspitz@sirillp.com

                                                _Counsel for Plaintiff_

                                                _*Motion to be admitted Pro Hac Vice to be submitted_